IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GUADA TECHNOLOGIES LLC,

       Plaintiff,

   v.

VICE MEDIA, LLC,

       Defendant.

Civil Action No. 17-1503-RGA

MEMORANDUM OPINION

Stamatios Stamoulis, STAMOULIS & WEINBLATT LLC, Wilmington, DE; David R. Bennett, DIRECTION IP LAW, Chicago, IL.

     Attorneys for Plaintiff.

Frederick L. Cottrell, III, Christine D. Haynes, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Christopher T. McWhinney, SULLIVAN & WORCESTER LLP, Washington, DC; Gerald D. Silver, SULLIVAN & WORCESTER LLP, New York, NY; Kimberly B. Herman, SULLIVAN & WORCESTER LLP, Boston, MA.

     Attorneys for Defendant.

September 17, 2018



**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before the Court is Defendant's Motion to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (D.I. 13) and related briefing (D.I. 14, 17, 22). The Court held oral argument on April 13, 2018. The parties later filed follow-up submissions (D.I. 23, 24).

For the reasons that follow, the Court will deny Defendant's Motion to Dismiss.

## I.     BACKGROUND

Plaintiff filed a patent infringement action on October 24, 2017 against Defendant, alleging infringement of U.S. Patent No. 7,231,379 ("the '379 patent"). (D.I. 1). At that time, Plaintiff also filed actions against six other defendants. Five of those cases have been resolved, and the sixth, against Gibson Brands, Inc., was stayed and administratively closed on May 8, 2018, after the defendant filed a notice of bankruptcy. (No. 17-1498, D.I. 17, 19).

The Complaint alleges that Defendant is "infringing at least claim 1 of the '379 patent." (D.I. 1, ¶ 13). The '379 patent contains seven claims, which read as follows:

1. A method performed in a system having multiple navigable nodes interconnected in a hierarchical arrangement comprising:

   at a first node, receiving an input from a user of the system, the input containing at least one word identifiable with at least one keyword from among multiple keywords,

   identifying at least one node, other than the first node, that is not directly connected to the first node but is associated with the at least one keyword, and

   jumping to the at least one node.

2. The method of claim 1 further comprising:

   providing a verbal description associated with the at least one node to the user.

3. The method of claim 1 further comprising:

searching a thesaurus correlating keywords with synonyms.

4. The method of claim 3 wherein the searching further comprises:

   identifying the at least one word as synonymous with the at least one keyword.

5. The method of claim 1 further comprising:

   determining that the at least one word is neither a keyword nor a synonym of any keyword; and

   learning a meaning for the word so that the word will be treated as a learned synonym for at least one particular keyword of the multiple keywords.

6. The method of claim 5 further comprising:

   adding the word to a thesaurus so that, when the word is input by a subsequent user, the word will be treated as synonymous with the at least one particular keyword.

7. A method performed in connection with an arrangement of nodes representable as a hierarchical graph containing vertices and edges connecting at least two of the vertices, the method comprising:

   receiving an input from a user as a response to a verbal description associated with a first vertex;

   analyzing the input to identify a meaningful term that can be associated with at least one keyword;

   selecting a vertex in the graph structure that is not connected by an edge to the first vertex, based upon an association between the meaningful term and the at least one keyword and a correlation between the at least one keyword and the vertex; and jumping to the vertex.

(D.I. 1-1, Exh. A, claims 1-7).

## II.    LEGAL STANDARD

### A. Motion to Dismiss

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule

12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

## B. Patent-Eligible Subject Matter

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized an implicit exception for three categories of subject matter not eligible for patentability—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The purpose of these carve outs is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* (emphasis omitted). In order "to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 72 (emphasis omitted).

The Supreme Court recently reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the

4

answer is yes, the court must look to "the elements of the claim both individually and 'as an ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *Id.* at 2357 (alterations in original) (quoting *Mayo*, 566 U.S. at 77). "[S]imply appending conventional steps, specified at a high level of generality, to . . . abstract ideas cannot make those . . . ideas patentable." *Mayo*, 566 U.S. at 82. Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice*, 134 S. Ct. at 2358 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010)). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358. For this second step, the machine-or-transformation test can be a "useful clue," although it is not determinative. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 2907 (2015).

Patent eligibility under § 101 is a question of law suitable for resolution on a motion to dismiss. *See OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1346 (Fed. Cir. 2014), *cert. denied*, 136 S. Ct. 119 (2015). However, "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field," which underlies the second step of the *Mayo/Alice* inquiry, "is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368

(Fed. Cir. 2018). Thus, "[w]hether [the claims] perform well-understood, routine and conventional activities to a skilled artisan" can be an issue of fact that precludes granting a motion to dismiss or for summary judgment. *Id.* at 1370. The Federal Circuit follows regional circuit law for motions to dismiss. *Content Extraction*, 776 F.3d at 1346.

## III. DISCUSSION

### A. Abstract Idea

"First, we determine whether the claims at issue are directed to [an abstract idea]." *Alice*, 134 S. Ct. at 2355. "The 'abstract ideas' category embodies 'the longstanding rule that [a]n idea of itself is not patentable.'" *Id.* (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). "The Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the *Mayo/Alice* inquiry." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). The Supreme Court has recognized, however, that "fundamental economic practice[s]," *Bilski*, 561 U.S. at 611, "method[s] of organizing human activity," *Alice*, 134 S. Ct. at 2356, and mathematical algorithms, *Benson*, 409 U.S. at 64, are abstract ideas. In navigating the parameters of such categories, courts have generally sought to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334. "But in determining whether the claims are directed to an abstract idea, we must be careful to avoid oversimplifying the claims because '[a]t some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (alterations in original) (quoting *Alice*, 134 S. Ct. at 2354).

The purported invention pertains to hierarchically arranged decisional networks. A hierarchically arranged decisional network is an arrangement of "nodes" (numbered boxes),

which are connected by "edges" (lines connecting the numbered boxes). ('379 patent, Fig. 1).[1]
A user makes a decision at a particular node, after which an "edge" is used to traverse from that
node to an adjacent node, which corresponds to the user's decision. (*Id.*).



FIG. 1

For example, at node 1, a user may choose between two items, which correspond to nodes 2 and
3. If the user chooses the item corresponding to node 2, she may then choose between items
corresponding to nodes 4 and 5.

The patent describes a traversal problem in prior art networks. In the prior art, "if the
user navigates down the wrong hierarchy of nodes, the user must either backtrack up the nodes
or start over." (D.I. 17 at 4 (citing '379 patent at 2:9-12)).

Plaintiff alleges that the invention solves this problem by "not locking the user into
movement to adjacent nodes or having to start over at the top node." (D.I. 17 at 4). Instead, says

_____

[1] Plaintiff distinguishes hierarchical networks from other networks in the prior art, such as "Bayesian networks." (D.I. 17 at 6 n.2).

Plaintiff, the invention allows the system to "jump" laterally from one branch to another. (*Id.* (citing '379 patent at 3:35-43)). Plaintiff argues that "jumping" is accomplished "by associating each node with descriptions, and matching words in user's responses with those descriptions so the system can jump to nodes that may not be directly connected to a user's current node in the hierarchically arranged decisional network." (D.I. 17 at 1-2).

Plaintiff argues, "Independent claims 1 and 7 of the '379 patent[2] are directed to methods for improved navigation in a computerized hierarchically arranged decisional network that must be navigated by a user as part of the processing, and that is also constructed to accept user inputs or data for navigation." (D.I. 17 at 12 (citing '379 patent at 2:9-16)).[3] As a result, argues Plaintiff, those independent claims are "directed to an improvement in the functioning of a computer," and are not abstract. *Enfish*, 822 F.3d at 1338. At oral argument, Plaintiff further analogized this case to *McRo, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016). In *McRo*, the Federal Circuit found that claims were not directed to an abstract idea because the claims were "focused on a specific asserted improvement in computer animation" whereby "[t]he claimed process uses a combined order of specific rules that renders information into a specific format." 837 F.3d at 1314-15. Plaintiff argues that the claims here provide "implementation details," which are not "purely functional," but rather amount to computer improvement. (D.I. 17 at 15). First, argues Plaintiff, the "receiving an input" claim limitation "requires a specific user . . . who provides the input, provides the location where the input is received . . . , and what the input is . . . ." (*Id.* (citing '379 patent at 22:47-53)). Second, argues

---

[2] Independent claim 7 is substantially similar to claim 1, except that it refers to "vertices" instead of "nodes," and requires the user's input to occur "as a response to a verbal description." Plaintiff makes no arguments for the validity of claim 7 that it does not make for claim 1. (D.I. 17 at 12).

[3] Plaintiff argues that the claims cover a "computerized" network, even though the claims do not expressly do so. (D.I. 17 at 12). I assume for purposes of a motion to dismiss that Plaintiff's reading of the patent claims is correct.

Plaintiff, the "identifying at least one node . . . associated with the at least one keyword" limitation requires "nodes associated with keywords." (D.I. 17 at 15-16 (citing '379 patent at 22:54-56)). Plaintiff argues that "nodes" in "the ordinary setup of a hierarchically arranged decision network" are "not associated with keywords." (D.I. 17 at 14). Third, argues Plaintiff, the "jumping" limitation "requires the system to directly traverse from one node/vertex to another node/vertex that is not directly connected." (*Id.* at 16).

Defendant, on the other hand, argues that the claims of the '379 patent are directed to the abstract idea of "using keywords to search hierarchically-arranged data." (D.I. 14 at 7). Defendant continues, "The claims of the '379 Patent are [] abstract because a human being could perform the steps of each method claim mentally or with pen and paper." (*Id.* at 13). "[A] method that can be performed by human thought alone is merely an abstract idea and is not patent-eligible under § 101." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011). Claim 1 recites, "a system having multiple navigable nodes interconnected in a hierarchical arrangement." Defendant argues that the claimed "nodes" and "interconnections" are "not physical" or "tangible objects," but rather are "pieces of information" and "logical relationships between them," respectively. (D.I. 14 at 14). "Such logic constructs," argues Defendant, "are organizational concepts that humans memorize and work with mentally, even unknowingly." (*Id.*). Defendant continues, "Similarly, the claim feature that nodes must be 'interconnected in a hierarchical arrangement' is an abstract concept drawn from mathematical 'graph theory.'" (*Id.* (citing '379 patent at 2:64-3:43)).

I agree with Defendant. The claims are directed to the idea of "using keywords to search hierarchically-arranged data." (D.I. 14 at 7). I assume that Plaintiff is correct that the claims cover a "computerized" network; even so, the claims are not directed to an invention that

improves the functionality of that computerized network. *See Enfish,* 822 F.3d at 1336 (finding

that the claims at issue were not directed to an abstract idea because "the plain focus of the

claims is on an improvement to computer functionality itself, not on economic or other tasks for

which a computer is used in its ordinary capacity"). Plaintiff makes no argument as to how the

claims' "implementation details" amount to an "improvement to computer functionality," or

anything other than generic automation of a once-manual method. Plaintiff argues that "nodes"

in "the ordinary setup of a hierarchically arranged decision network" are "not associated with

keywords." (D.I. 17 at 14, 19). However, "keywords" do not necessarily invoke computer

functionality at all. They merely label certain decisions in a decisional hierarchy. Plaintiff

further argues that the claims provide "implementation details." (*Id.* at 15-16). However,

"receiving an input," "identifying at least one node," and "jumping," are all steps that a person

can perform mentally in navigating a decisional hierarchy. The "implementation details" can be

computerized, but the '379 patent provides no information as to how they might improve the

functionality of a computer or computerized data set.

Plaintiff identifies several "claim construction issues," which it says preclude me from

granting Defendant's motion, and proposes a claim construction for each purported issue. (D.I.

17 at 7-9). However, even were I to adopt Plaintiff's constructions, the independent claims

would be abstract. First, Plaintiff proposes that, "A system having multiple navigable nodes

interconnected in a hierarchical arrangement" and "an arrangement of nodes representable as a

hierarchical graph containing vertices and edges connecting at least two of the vertices" mean "a

computerized system of multiple nodes interconnected in a hierarchically arranged decisional

network in which a user provides inputs or responses at each node to navigate through adjacent

nodes in the hierarchical arrangement." (D.I. 17 at 8). At most, Plaintiff's proposed construction

puts the claims into a more specific technological environment. "The prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice*, 134 S. Ct. at 2358. Second, Plaintiff proposes that "jumping" means "a direct traversal from one node or vertex to another node or vertex that is not directly connected to it (*i.e.*, without traversal through any intervening nodes or vertices or to a node or vertex whose only least common ancestor with that node or vertex is the root node or vertex)." (D.I. 17 at 8). However, the claims do not actually disclose a mechanism for "jumping." Plaintiff does little more than claim the idea of moving directly from one "node" in a decisional hierarchy to another non-adjacent node. Third, Plaintiff proposes that the "jumping to the at least one node" and "jumping to the vertex" limitations require that the "system," rather than the "user," jumps to the "at least one node" or "vertex." (*Id.* at 9). At most, Plaintiff's proposal amounts to the automation of the mental process of jumping from one node to another. The proposal does not render the claims non-abstract.

`      The dependent claims are no less abstract than the independent claims. Claim 2, like claim 7, covers, "providing a verbal description associated with the at least one node to the user." Claims 3 and 4 cover using a "thesaurus" to correlate keywords with synonyms. Searching a thesaurus is human task that in no way improves the functioning of a computer. At most, it is an "insignificant post-solution activity" added onto claim 1's abstract use of keywords. *Mayo*, 566 U.S. at 73 (quoting *Bilski*, 561 U.S. at 611)). Claims 5 and 6 cover, "learning a meaning for [a] word," and "adding the word to a thesaurus," respectively. Claim 5 does not specify a mechanism for "learning," but rather claims the abstract idea of "learning." Likewise, claim 6 does not specify a mechanism for "adding." Accordingly, each dependent claim is just as abstract as the independent claims.

I find that all claims of the '379 patent are directed to an abstract idea.

## B. Inventive Concept

The determination that a patent is directed to an abstract idea "does not render the subject matter ineligible." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). Having decided that the patent's claims are directed to an abstract idea, the Court must next "determine whether the claims do significantly more than simply describe the abstract method." *Ultramercial*, 772 F.3d at 715. Since "a known idea, or one that is routine and conventional, is not inventive in patent terms," this analysis "favors inquiries analogous to those undertaken for determination of patentable invention." *Internet Patents*, 790 F.3d at 1346. Indeed, the Federal Circuit has noted that the two stages of the *Alice* two-step inquiry "are plainly related" and "involve overlapping scrutiny of the content of the claims . . . ." *Elec. Power Grp. LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). Furthermore, neither "[a] simple instruction to apply an abstract idea on a computer," nor "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer" satisfies the requirement of an "inventive concept." *Intellectual Ventures I, LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015).

Plaintiff points to two claim limitations which it argues provide an "inventive concept."

Plaintiff argues that "jumping" was not "how prior art hierarchies were navigated," and thus provides an inventive concept. (D.I. 17 at 19). Plaintiff also argues that using "keywords" to "jump" from "node" to "node" provides the required inventive concept. (*Id.*).

An inventive concept "must be more than 'well-understood, routine, conventional activity.'" *Ultramercial*, 772 F.3d at 715. Defendant argues that both "jumping" and "keyword searching" were "well-known" concepts when the patent was filed on November 19, 2002. (D.I.

12

14 at 16; D.I. 22 at 4-6; *see* D.I. 1-1). However, Defendant provides no citation demonstrating

that "jumping" and "keyword searching" were then well-known.[4] The patent does refer to the

association between keywords and nodes as "an index." ('379 patent at 5:1-6). However, that

reference does not speak to the conventionality of keywords, nodes, and jumping. Thus, there

remains an open question as to whether the claimed "jumping" and "keywords" were "well-

understood, routine, conventional activit[ies]."

"The question of whether a claim element or combination of elements is well-understood,

routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact,

such as this one, that is pertinent to the invalidity conclusion must be proven by clear and

convincing evidence." *Berkheimer*, 881 F.3d at 1368. Thus, "[w]hether [the claims] perform

well-understood, routine and conventional activities to a skilled artisan [can be] a genuine issue

of material fact . . . ." *Id.* at 1370. Here, there exists a factual dispute as to whether the

purported inventive concepts were "well-understood, routine and conventional" in 2002.

Therefore, I need not determine whether the '379 patent discloses a mechanism for "jumping."

*See Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1331 (Fed. Cir. 2017)

("Nowhere do the claims recite elements or components that describe *how* the invention

overcomes these compatibility issues."); *Two-Way Media Ltd. v. Comcast Cable Commc'ns,

LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) ("Inquiry therefore must turn to any requirements for

*how* the desired result is achieved."). Likewise, I cannot determine at this time whether

---

[4] Defendant's argument is that the use of keywords and jumping were conventional as the Google search engine already existed (D.I. 14 at 16) and Microsoft's Windows was already "ubiquitous" (D.I. 22 at 3). These facts are asserted as though they self-evidently prove Defendant's point. Perhaps they do, but they are not referred to in the patent and Defendant provides no other basis upon which I can determine the factual correctness of Defendant's argument given that we are at the motion to dismiss stage of the case.

"jumping" and "keywords" provide an inventive concept.[5] Defendant may re-raise the issue at summary judgment.

For the reasons given above, I find that claims 1-7 of the '379 patent are drawn to an abstract idea, but that there is a factual issue as to whether they provide an inventive concept. Therefore, I will deny Defendant's Motion to Dismiss.

## IV. CONCLUSION

Defendant's Motion to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (D.I. 13) is denied.

A separate order will be entered.

---

[5] The additional material covered by the dependent claims does not add an inventive concept. Claim 2 adds no material beyond what is covered by independent claim 7. Every other dependent claim covers a "well-understood, routine, or conventional activity." *Ultramercial*, 772 F.3d at 715. Claims 3 and 4 cover using a thesaurus, and claims 5 and 6 cover "learning a meaning for a word" and "adding the word to a thesaurus." Thesauruses are well-known, and their expansion is conventional. Plaintiff fails to point to any mechanism for "learning" or "adding" that might provide an inventive concept.